## ANN C. PRATT, The (AIREY v.)

[See Airey v. The Ann C. Pratt, Cases Nos. 113a and 114.]

---

## ANN C. PRATT, The (CARRINGTON v.)

[See Carrington v. The Ann C. Pratt, Cases Nos. 2,445 and 409.]

---

# Case No. 410

## The ANN D. RICHARDSON.

[Abb. Adm. 499.][1]

District Court, S. D. New York. April, 1849.[2]

SHIPPING — DELIVERY OF GOODS — LIEN FOR FREIGHT— BREAKING UP OF VOYAGE — SALE OF CARGO.

1. As between the owner of the cargo and the ship-owner, the delivery of the cargo at the port of destination is a condition precedent to the right to freight; and without such delivery

---

[1][Reported by Abbott Brothers.]

[2][Affirmed by circuit court in The Ann D. Richardson, Case No. 411.]

the acceptance of the cargo at an intermediate place by the owner of the cargo, is necessary to enable the ship-owner to recover either full or pro rata freight.

[Cited in The Joseph Farwell, 31 Fed. 848.]

2. The master, although agent for the ship and cargo to the extent of being empowered, in a case of extreme urgency, to sell either or both. is not authorized to accept the cargo on behalf of its owner short of the port of delivery.

3. The laying claim to the proceeds of a sale of a cargo made by the master at an intermediate port, or the bringing suit for such proceeds, does not amount, in law, to a voluntary acceptance of the cargo, or to a ratification of the act of the master in breaking up the voyage.

4. Where a vessel puts in at an intermediate port in distress, and it is there found that a portion of the cargo has been rendered worthless by perils of the sea, while the residue is not of sufficient value to warrant continuing the voyage, and such portion is therefore sold by the master and the voyage broken up, no claim for freight, either in full or pro ratá, or upon a quantum meruit, can be maintained by the ship-owner against the shipper.

[Cited in The Joseph Farwell, 31 Fed. 847; The L'Amerique, 35 Fed. 844.]

5. Upon what principles the general average should be adjusted in such a case, as respects the contribution due from the cargo.

In admiralty. This was a libel in rem, by Robert Taylor against the bark Ann D. Richardson, to recover the proceeds of a sale of goods shipped on board the bark by the libellant.

The facts are stated in the opinion of the court.

Francis B. Cutting, for libellant.
Daniel Lord, for claimants.

BETTS, District Judge. The facts upon which the points in contestation in this cause arise, are these: The libellant shipped at Philadelphia, on March 18, 1847, on board the bark Ann D. Richardson, for Londonderry, a cargo consisting of wheat flour, Indian meal, corn, and navy bread, for which the usual bills of lading were executed by the master, engaging to deliver the cargo to the consignees in the bill of lading named, they paying stipulated freight therefor. The vessel sailed the next day on her voyage. She was new and stanch, but before leaving sight of the Capes made water at the rate of one hundred strokes the hour. It appears, however, upon the evidence, that she was fully seaworthy when she sailed, and that the amount of leakage she exhibited was usual in new vessels, and did not affect the cargo or her seaworthiness. On the 27th of March she encountered a heavy gale from the S. E., which continued to the 30th, and then increased to extreme violence. The bark was thrown on her beam ends, her masts were cut away, and she lay water-logged. The crew, with great labor, freed her of water, and rigged spars and endeavored to work the vessel to Bermuda, but being unable to make that port, they put into St. Thomas, on the 23d of April, as a port of necessity. A survey was there held

of the cargo. A portion of the corn, (557 bushels,) was found in a putrefying state, and was thrown overboard as valueless. The chief part of the residue of the cargo had been wet and damaged by the stress of weather to such a degree that it could not safely be transported to the port of destination, and the master was advised by the surveyors to sell the whole cargo remaining, that not injured not being deemed of value to justify carrying it to Londonderry. It was accordingly sold on the 11th of May, at auction, for $7,730.02.

The claimants allege this sum is subject to an average charge of $582.08; and they also contend that the vessel is entitled to full freight and primage for the whole voyage, amounting to $4,562.26, and the balance, $1,712.85, they are willing to pay over to the libellant. They deny their liability for any thing beyond that sum. The vessel was repaired at St. Thomas and ready to receive a cargo and prosecute her voyage, by the 2d of June. She did not offer to proceed to Londonderry with the sound portion of the cargo, nor did she provide any other vessel in her place. She was employed on a different service. The libellant was not present in person or by any authorized agent at St. Thomas, and was no way consulted in the disposition of the cargo and breaking up the voyage.

Three questions were discussed upon these facts: 1. Whether the owner of the vessel was entitled to full or pro rata freight, or any freight for the transportation of the cargo to St. Thomas. 2. Whether he was justified in selling the cargo and breaking up the voyage at the latter port. 3. What average the cargo of the libellant was legally liable to pay.

In arguing the case, the counsel have examined minutely the doctrines obtaining in the English and American courts, and it is strenuously contended for the ship-owner that upon the well-recognized principles of American law, full freight was earned in this case, and that the acts of the master, under the emergency, must be regarded as the acts of the libellant, by which the vessel was deprived of her cargo, and prevented completing the voyage undertaken. If this position is not sanctioned by the court, it is urged that the libellant, by demanding the proceeds of the cargo and bringing suit to recover them, adopts and confirms the sale made by the master.

It is not to be controverted that the English rule, applicable to a voyage so circumstanced, debars the ship-owner of all claim to freight. The case of Vlierboom v. Chapman, 13 Mees. & W. 230, presents a statement of facts covering all the essential features of this case. A cargo of rice was shipped at Batavia for Rotterdam, by the bill of lading to be delivered there on payment of a stipulated freight. The ship encountered a severe hurricane, and it became nec-

essary to throw part of the cargo overboard and to take the vessel, in a damaged state, to the Mauritius. The cargo was there examined, and it was found necessary, without delay, to sell the whole, otherwise it would become utterly worthless from the progress of rapid putrefaction. The rice was sold ·at Mauritius by agents, to whom the master, acting bona fide, confided the ship and cargo; and the proceeds were remitted to the ship-owners. The plaintiff, (owner of the cargo,) had no agent at Mauritius, and neither of the parties was present at any part of the transaction, nor had any knowledge thereof until after the sale of the cargo. Thus far the two cases are brought under the same range of facts. The English suit, however, seems to have been an amicable one, as the defendants did not retain freight money, nor set up an absolute charge for it.

The question submitted to the court was, whether the defendants had any lien or right of deduction or set-off against the proceeds of the rice, either for the freight in the bill of lading, or for pro rata freight, or for any freight on a quantum meruit. The plaintiffs' point was, that under the above circumstances, the defendants were entitled to no set-off for freight. The defendants' point was, that they had a set-off or lien, for freight, to the extent of £1,413.0.4, the produce of the sale, or, at all events, to some extent. The court decided, that if the master might be regarded the agent of the owners ex necessitate, so as to validate the sale, he was not such agent with a right to accept for them a delivery of the cargo at Mauritius, in place of Rotterdam, and that the plaintiffs not having transported the cargo conformably to their contract, were not entitled to full freight, nor to pro rata freight, as for a part performance accepted in lieu of a full one. It was also decided, that there was no foundation for a quantum meruit claim or allowance of freight. The court grounded their reasoning and decision very much upon some American cases, cited by Judge Story, in his edition of Abbott on Shipping, (page 328.)

The argument for the defendant in this case now is, that the doctrine of the American decisions was misapprehended, and that the rule to be deduced from them is, that the ship-owner, under like circumstances, is entitled to ·full freight, or at least to pro rata freight. In the case of Miston v. Lord, [Case No. 9,655,] decided in the United States circuit court for this district, in September, 1848, the doctrines of the case of Vlierboom v. Chapman, were recognized in so far as the· authority of the master to sell cargo under similar circumstances was involved. As between owners and underwriters, he may, on general authority, have an implied power to do what is fit and right to be done, with ship or cargo, in case

of emergency. Park Ins. (Ed. 1842,) 345. But the court regarded it a fundamental principle of the contract of affreightment, that as between the owner of cargo and ship-owner, no right to freight accrued except upon performance of the contract by the ship, unless the terms of the contract were dispensed with ˙by the owner of the cargo; although such discharge need not be by express agreement, but might be implied or inferred from his acts. This is believed to be the rule of maritime law adopted and enforced in the European and American courts. Pothier Traite du Contrat de Louage, No. 59; Boulay Paty, tit. 5, § 16; Pardessus, pt. 4, tit. 14, c. 2, No. 718; Abb. Shipp. 492, note 1; Vlierboom v. Chapman, 13 Mees. & W. 239; 3 Kent, [Comm.] (6th Ed.) 218; Hurtin v. Union Ins. Co., [Case No. 6,942.]

The delivery of the cargo at the port of destination is considered a condition precedent to the right to freight, and without that, the acceptance of the cargo at an intermediate place, by the owner of it, is necessary to enable the ship-owner to maintain a claim to full, or pro rata freight. Caze v. Baltimore Ins. Co., 7 Cranch, [11 U. S.] 358; 3 Kent, [Comm.] 228, 229, note a; Abb. Shipp. 534, note 1; The Nathaniel Hooper, [Case No. 10,032.] The case of The Nathaniel Hooper demonstrates that the rule in admiralty is in consonance with that at common law on the subject. [Case No. 10,-032.] The case is not affected by the later decision in Jordan v. Warren Ins. Co., [Case No. 7,524,] for there a voluntary acceptance of the cargo by its owner was made; but a claim to the proceeds of sale, or bringing suit therefor, does not amount in law to a voluntary acceptance of the cargo, or to a ratification of the act of the master in breaking up the voyage; nor. is the master, though agent for the ship and cargo to the extent of being empowered in a case of extreme urgency to sell either or both, ex officio an agent of the ship, authorized to accept the cargo short of the port of delivery and break up the voyage. Miston v. Lord, [Case No. 9,655.]

The points in the case now ˙under consideration, not involved in the decision in Miston v. Lord, [supra,] or in Vlierboom v. Chapman, [supra,] are, that a portion of the cargo on the arrival of the vessel at St. Thomas was sound and in a condition to be transported to the port of destination, but was sold by the master together with that which was injured and perishing, and that the vessel was repaired within a reasonable time at St. Thomas, and placed in a condition to perform her voyage, but did not offer to complete it.

Most unquestionably the master was not bound to take on board and attempt to carry forward, the putrid and worthless portion of the cargo, nor was it his duty to receive that which had been so injured as to be liable

to putrefaction, or to occasion disease or discomfort to her ship's company, or injury to the sound cargo in its transportation. Those principles are stated and enforced with earnest perspicuity in the two American cases before cited. Jordan v. Warren Ins. Co., [Case No. 7,524;] Miston v. Lord, [supra,] circuit court, 1848. When the whole cargo is so damaged that it cannot be transported without endangering the safety of the ship or crew, or cannot, from its perishing state, be probably so preserved as to endure transportation at all, the ship need not proceed with it, or offer to do so; but the remedy of the ship-owner is on his policy for freight, he having failed to earn it, by means of perils insured against or insurable. 1 Phil. Ins. 290. The loss of the cargo must, however, be total, for although damaged to such a degree as to be not worth the freight at the port of destination, this does not amount to that kind of total loss, which authorizes a recovery of the freight on a policy. Herbert v. Hallett, 3 Johns. Cas. 93; Griswold v. New York Ins. Co., 1 Johns. 205.

The present action seems framed upon the notion that if the ship-owner, on the facts, would have a right to recover freight on a policy of insurance, he has the same remedy against the owner of the cargo. That is clearly not the law. Considering the condition of the cargo on the arrival of the vessel at St. Thomas, as equivalent to a total loss or physical destruction of it, the plaintiff would be entitled, on insurance of freight, to recover his whole freight for the voyage, (1 Phil. Ins. 290, 427,) yet as against the shipper, he cannot recover freight except on performance of the condition of transporting the cargo and delivering it at the port of destination, conformably to the contract of affreightment.

Independent of this principle, there remained a portion of the cargo in this case, in sound condition; and to entitle the ship-owner to claim freight at all, he must have carried forward so much of the cargo as could be transported. It is no concern of his, whether by so doing the interests of the shipper would be advanced or consulted. He has nothing to do with the question of profit or loss to the shipper; and his vessel having been soon repaired and capable of performing the voyage, it was his duty to complete it, and then he would be entitled against the shipper to full freight on all the cargo delivered, in specie, whatever its condition or value; and might recover against the underwriter for that portion which perished on the voyage, which, for that reason, could not be delivered. I shall, therefore, pronounce against the libellant on that part of his action which claims the recovery of freight in full or pro rata, or compensation upon a quantum meruit.

It is not denied by the libellant that the ship-owner is entitled to a contribution from the cargo on the general average of losses sustained by the ship. But it has been made a serious question in the cause as to the particulars of valuation and loss which shall enter into the computation and adjustment of that average.

Counsel, on both sides, however, conceding that a readjustment must be made, admit that the better course now is to take general directions from the court respecting the method of stating the average, and to wait until the adjustment is presented, before a decision is asked in detail upon the particulars proper to be included in it. The adjuster may so settle these points as not to leave it desirable to either party to litigate the matter before the court. In the adjustment presented to the court, the ship is credited with full freight for the voyage. This is erroneous. No allowance is to be made on that item beyond the value of the freight on the cargo thrown overboard, and that value will be made contributable, also, in the general average. The cargo, on the question of general average, is not to be charged with any expenses incurred in respect to it, after the voyage was broken up and abandoned.

The charges for reparations made to the vessel subsequently, may properly be referred to as a means of measuring the actual value of her injuries sustained for the common benefit. That allowance has no application to claims for the care and management of the cargo after it ceased to be connected with the vessel for the purposes of the voyage. Services or expenditures of that character have no connection with the ship or the injuries she incurred for the common advantage, and cannot, therefore, be subjects of general average. A decree, with special directions, must be entered according to the foregoing principles.